```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICIA DANGERFIELD,                          :

                Plaintiff,                     :    02 Civ. 2561 (KMW) (GWG)

        -v.-                                   :    REPORT AND
                                                    RECOMMENDATION
MERRILL LYNCH, PIERCE,                         :
FENNER & SMITH, INC.,
                                               :
                Defendant.
------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Patricia M. Dangerfield ("Dangerfield"), proceeding pro se, brought this lawsuit against Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), and her former husband, J William Dangerfield ("Mr. Dangerfield"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), securities fraud, common law fraud, conversion, and aiding and abetting conversion. In September 2003, this Court dismissed all of Dangerfield's claims against Merrill Lynch except the claim of aiding and abetting conversion. In January 2004, Dangerfield stipulated to the dismissal of her claims against Mr. Dangerfield following his death. Merrill Lynch has now moved for summary judgment on the remaining claim against it. For the reasons below, Merrill Lynch's motion should be granted.

I. BACKGROUND

    A. Dangerfield's Claim of Aiding and Abetting Conversion

While the allegations in Dangerfield's Amended Complaint are not admissible in this motion for summary judgment, we briefly summarize the relevant portions to provide some context for her claim.

Dangerfield obtained a final decree of divorce from Mr. Dangerfield in the District Court of Harris County, Texas, on March 11, 1991, under which she was awarded property belonging to Mr. Dangerfield. See First Amended Complaint (corrected version), filed Nov. 20, 2002 (Docket #33) ("Am. Compl."), ¶ 13; Decree of Divorce, dated Mar. 11, 1991 (reproduced as Ex. 2 to Plaintiff's First Amended Complaint (first version), filed Nov. 15, 2002 (Docket #31)), at 20. Dangerfield attempted to obtain information regarding Mr. Dangerfield's accounts at Merrill Lynch by means of subpoenas issued by the Texas court in 1990, see Am. Compl. ¶¶ 10-11, and in 1998, see id. ¶¶ 20-22; Subpoena Duces Tecum, dated Apr. 9, 1998 (reproduced as Exs. 4 and 5 to Docket # 31). She claims that, despite these requests, Merrill Lynch withheld relevant information about Mr. Dangerfield's accounts and that this course of conduct continued through June 2000. See Am. Compl. ¶¶ 27-28, 34. Dangerfield alleges that Merrill Lynch knew that its failure to respond to the subpoenas properly would "facilitate the conversion" by Mr. Dangerfield of accounts at Merrill Lynch rightfully belonging to Dangerfield. Id. ¶ 58.

B. Relevant Procedural History

Dangerfield filed the original complaint in this case on April 3, 2002. See Complaint, filed Apr. 3, 2002 (Docket #1). The Amended Complaint, filed several months later, included claims of RICO violations, securities fraud, common law fraud, conversion, and aiding and abetting conversion. See Am. Compl. ¶¶ 30-49, 50-54, 55-58, 59-61. On April 11, 2003, this Court issued a Report and Recommendation recommending the dismissal of all claims except for the aiding and abetting conversion claim. See Report and Recommendation, dated Apr. 11, 2003 (Docket #50). That Report was adopted by the district judge, who granted Dangerfield leave to move to amend her complaint on certain grounds. See Order, dated Sept. 22, 2003 (Docket

#103), at 19-23, 28-29. Dangerfield thereafter filed a "Second Amended Complaint," which the Court construed as a motion to amend her complaint. See Report and Recommendation, dated Feb. 2, 2004 (Docket #76); Order, dated Mar. 17, 2004 (Docket #80). That motion was denied. Id.

On April 8, 2004, the Court issued an order directing that discovery proceed on the issues of Merrill Lynch's statute of limitations defense and proceedings brought by Dangerfield against Mr. Dangerfield in Norway. See Order, dated Apr. 8, 2004 (Docket #82). This Order was issued in light of the Merrill Lynch's contention that it had a complete defense to Dangerfield's claims based on the applicable statute of limitations and the res judicata effect of a judgment unfavorable to Dangerfield in Norway. The original deadline for completion of discovery was June 11, 2004. Id.

Following certain discovery disputes, the Court extended the deadline for the completion of discovery to August 6, 2005. See Order, dated July 28, 2004 (Docket #86). Ultimately, the Court granted the parties leave to make cross-motions to compel with respect to their outstanding discovery disputes. See Order, dated Oct. 5, 2004 (Docket #90).

On October 22, 2004, Dangerfield filed a motion to compel. See Motion for Order Compelling Production of Documents Requested in Plaintiff's First Discovery Request to Defendants, dated Oct. 21, 2004 (Docket #93) ("Pl. Motion to Compel"). On the same day, Merrill Lynch filed its own motion to compel. See Notice of Motion, dated Oct. 22, 2004 (Docket #91); Merrill Lynch's Motion to Compel Production of Documents, dated Oct. 22, 2004 (Docket #92). The gravamen of Dangerfield's motion was similar to the basis for the underlying

claim itself: that Merrill Lynch was not fully disclosing information on accounts in the name of Mr. Dangerfield or related accounts. See Pl. Motion to Compel at 1-3.

At oral argument on the motions, the Court reversed its April 8, 2004 Order, and directed that discovery should proceed not merely as to the statute of limitations and res judicata defenses but as to the entire aiding and abetting conversion claim. See Transcript of Conference held on January 20, 2005, filed Feb. 16, 2005 (Docket #106) ("Tr."), at 6-7, 50-51. This expansion of discovery was also reflected in a written order issued on the same date of the conference. See Order, dated Jan. 20, 2005, at 1 (Docket #104) ("January 20 Order"). The Court ordered Merrill Lynch to respond to the vast majority of plaintiff's discovery requests. See Tr. 26-48. The Court also required Merrill Lynch to provide Dangerfield with any documents it possessed relating to account numbers listed in the motion to compel, or to state that it did not possess such documents. See Tr. 20-21; 39:12-13. The Court ordered Merrill Lynch to produce any documents in its possession for a 12-year period: starting from January 1, 1991, until the date of Mr. Dangerfield's death, May 27, 2003. See Tr. 37:2-7; January 20 Order ¶ 1. The Court set a deadline of March 21, 2005, for the completion of all discovery. January 20 Order ¶ 2.

In February 2005, Merrill Lynch sought a 30-day extension for the discovery deadlines. This request was granted. See Order, dated Feb. 22, 2005 (Docket #107) ("February 22 Order"). Merrill Lynch sent a letter to the Court describing its responses to Dangerfield's requests, and indicating the efforts it had made to locate the documents requested. See Letter from James M. Bergen to Magistrate Judge Gabriel W. Gorenstein, dated Mar. 24, 2005 ("Bergen Letter") (Docket # 130); see also Declaration of Daniel R. Spector, dated July 25, 2005 (attached to Notice of Motion for Summary Judgment, dated July 25, 2005 (Docket #114)) ("Spector Decl."),

¶ 24 (showing list of each account number referenced in the Amended Complaint and how Merrill Lynch responded). In April 2005, Dangerfield sought a 60-day extension of the discovery period. This request was granted, see Memorandum Endorsement, dated Apr. 13, 2005 (Docket #109), making the deadline for all discovery June 21, 2005, and the deadline for summary judgment motions July 25, 2005. See January 20 Order; February 22 Order. Dangerfield then sought an order requiring that "an independent forensic computer expert" be given access to Merrill Lynch's electronic records, and that she be provided with Mr. Dangerfield's "portfolio" and "microfiche" copies of documents. See Motion for Additional Order to Compel Discovery of Electronic Documents, dated Apr. 18, 2005 (Docket #111), ¶¶ 1-3. This request was denied because no factual or legal basis was provided for the issuance of such an order. See Memorandum Endorsement, dated Apr. 19, 2005 (Docket #110).[1] A few days before discovery was to end, Dangerfield requested yet another 60 days for the completion of discovery. That request was denied because, as described in the Court's Order, Dangerfield had already been allotted ample time to conduct her discovery, and the Court had extended the discovery deadline several times, including the recent 60-day extension at Dangerfield's request. See Order, dated June 28, 2005 (Docket #113).

---

[1]Specifically, in contravention of the instructions given to her at the January 20, 2005, conference, see Tr. 11-14, Dangerfield provided no evidence to support her assertion that Merrill Lynch had failed to respond to her discovery requests – the factual predicate for the relief sought in her motion. The Court denied the motion also because Dangerfield had once again not complied with the Court's requirement that she confer with her adversary and request a pre-motion conference, see Fed. R. Civ. P. 37(a)(2)(B) and Local Civil Rule 37.1, before filing the discovery motion.

C. The Motions filed by the Parties

1. Merrill Lynch's Motion for Summary Judgment

On July 25, 2005, Merrill Lynch moved for summary judgment against Dangerfield. See Notice of Motion, filed July 25, 2005 (Docket #114); Memorandum of Law in Support of Motion for Summary Judgment, dated July 25, 2005 (Docket #116) ("Sum. Judg. Memo"); Statement of Material Facts Pursuant to Local Rule 56.1, dated July 25, 2005 (Docket #119) ("56.1 Statement"). Included in its motion was the statement required by Local Civil Rule 56.2 informing Dangerfield of the materials she would have to submit in order to oppose the summary judgment motion. See Notice to Pro Se Litigant Opposing Motion for Summary Judgment, dated July 25, 2005 (Docket #117).

Dangerfield filed a response to this motion. See "Notice of Motion," dated Aug. 24, 2005 (Docket #122) (annexing Plaintiff's Answer to Defendants #1-52 Statement of Material Facts Pursuant to Local Rules 56.1) ("56.1 Reply"); Amended Memorandum of Law, Response to Summary Judgment by Defendants, dated Aug. 25, 2005 (Docket #125) ("Sum. Judg. Response"); Declaration of Patricia M. Dangerfield, dated Aug. 24, 2005 (Docket # 123).

Merrill Lynch filed a memorandum of law in reply. See Reply Memorandum of Law in Further Support of Motion for Summary Judgment, dated Sept. 12, 2005 (Docket #126).

2. Dangerfield's Motion for a "Default Judgment"

On July 25, 2005, the same date summary judgment motions were due, Dangerfield filed a document she entitled "Motion for Default Judgment Against Merrill, Lynch, Pierce, Fenner & Smith, Inc.," filed July 25, 2005 (Docket #115). Accompanying these papers was Plaintiff's

Memorandum of Law in Support of Motion for Default Judgment, filed July 25, 2005 (Docket #118) ("Default Judg. Memo").

Counsel for Merrill Lynch wrote to the Court inquiring how it should treat this motion inasmuch as the motion was apparently raising a discovery dispute and discovery had concluded the previous month. On August 10, 2005, the Court issued an order noting the lack of clarity in Dangerfield's papers, specifically, whether Dangerfield was "seeking to have this Court compel the production of additional existing documents or whether plaintiff instead seeks a sanction based on the defendant's failure to retain documents, or both." See Order, dated Aug. 10, 2005 (Docket #120) ("August 10 Order"), at 1. The Court noted that the motion violated the Court's own practices requiring the parties to consult with each other and to write to the Court before filing a discovery motion, and that it violated the requirements of Fed. R. Civ. P. 37(a)(2)(B) and Local Civil Rule 37.1. Id. Finally, the Court noted that the motion was untimely under paragraph 7 of the January 20 Order, which had specifically provided that any applications regarding discovery had to be made "promptly after the cause for such a motion arises" and, except in extraordinary circumstances, no later than 30 days prior to the close of discovery, or May 21, 2005. See January 20 Order at 2. The January 20 Order had further warned that "untimely applications will be denied." Id. Nonetheless, the Court directed Merrill Lynch to respond to the merits of the claims and factual assertions made by Dangerfield in these motion papers. See August 10 Order at 1. Before Merrill Lynch could do so, Dangerfield filed what appears to be a supplement to or an amended version of her original motion for a default judgment. These documents consist of an Affidavit, a Notice of Motion, and an "Amended

Memorandum of Law for Default Judgment," accompanied by ten numbered exhibits. These three items were filed together on August 24, 2005 as Docket #124.

In accordance with the Court's direction in the January 20 Order, Merrill Lynch submitted a declaration – filed at the same time it filed its reply brief on the summary judgment motion – that addressed Dangerfield's contentions in her motion for a default judgment. See Declaration of James M. Bergen, dated Sept. 12, 2005 (Docket #127).

In reply, Dangerfield filed a document entitled "Answer to Response to Summary Judgment & Default Judgment Dated 9/21/05," on September 23, 2005 (Docket #129). Annexed to this document was a one-page Affidavit executed by Dangerfield stating that additional exhibits would be sent "early next week." No additional exhibits were received or filed, however.

## II. LAW GOVERNING SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw "all justifiable inferences" in favor of the non-moving party. Id. at 255 (citation omitted). Nevertheless, once the moving party has shown

that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (alteration in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000). If the nonmoving party's evidence is "merely colorable" or is not "significantly probative," summary judgment may be granted. See Anderson, 477 U.S. at 249-50 (citing Dombrowski v. Eastland, 387 U.S. 82, 84 (1967); First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290 (1968)); see also Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (plaintiff may not defeat summary judgment "by relying on . . . conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.").

Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential

to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

III. DISCUSSION

Normally, this Court would attempt determine all the undisputed facts for purposes of determining a motion for summary judgment. The problem with taking that route here is that, while Merrill Lynch has provided a Rule 56.1 Statement listing undisputed facts, see 56.1 Statement, Dangerfield's responses to this statement, see 56.1 Reply, either 1) do not controvert the corresponding paragraph in the 56.1 Statement, 2) are not followed by citations to evidence that would be admissible at trial as required by Local Civil Rule 56.1(d), 3) are conclusory, and/or 4) are incomprehensible.

It is not necessary, however, to parse the nature of each of Dangerfield's responses because Merrill Lynch's motion may be decided on just one of the many grounds it raises: specifically, Dangerfield's failure to offer admissible evidence as to one of the elements of her claim of aiding and abetting conversion. Accordingly, we now address this aspect of Merrill Lynch's argument. Following this discussion, we turn to whether Dangerfield's allegations regarding Merrill Lynch's responses to her discovery requests should affect the disposition of this motion.

A. Dangerfield's Claim of Aiding and Abetting Conversion

New York law permits a claim for aiding and abetting conversion where the plaintiff can prove "(1) the existence of a violation committed by the primary (as opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in achievement of the violation." Lesavoy v.

10

Lane, 304 F. Supp. 2d 520, 526 (S.D.N.Y. 2004) (citing Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc., 2002 WL 31426207, at *7 (S.D.N.Y. Oct. 30, 2002), vacated on other grounds, Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296 (2d Cir. 2004), cert. denied, 125 S. Ct. 1704 (2005)); accord Calcutti v. SBU, Inc., 273 F. Supp. 2d 488, 493 (S.D.N.Y. 2003) (citing cases).[2] While "wrongful intent is not an essential element of the conversion," Leve v. C. Itoh & Co. (Am.), Inc., 136 A.D.2d 477, 478 (1st Dep't) (citing cases), appeal denied, 71 N.Y.2d 806 (1988), a plaintiff must show that the defendant "aided and assisted" the converter "with culpable knowledge that such funds did not belong to [the converter]." Weisman, Celler, Spett & Modlin v. Chadbourne & Parke, 271 A.D.2d 329, 330 (1st Dep't) (emphasis added), leave to appeal denied, 95 N.Y.2d 760 (2000); accord Lenczycki v. Shearson Lehman Hutton, Inc., 238 A.D.2d 248, 248 (1st Dep't 1997) (aider and abettor must "kn[ow] of [the converter's] intention to convert the funds") (citation omitted). New York "'has not adopted a constructive knowledge standard for imposing aiding and abetting liability.'" Lesavoy, 304 F. Supp. 2d at 526 (citing Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996)). Thus, "New York law requires actual knowledge of the wrongful conduct." Diamond State Ins. Co. v. Worldwide Weather Trading LLC, 2002 WL 31819217, at *6 (S.D.N.Y. Dec. 16, 2002) (emphasis added and citations omitted).

---

[2]The parties in their briefs have assumed that New York law applies to Dangerfield's non-federal claims, see Sum. Judg. Memo at 12-25; Sum. Judg. Response at 17, 19, thereby signaling their consent to the application of New York law. See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (citing Tehran-Berkeley Civil & Envtl. Eng'rs. v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)). In addition, Dangerfield was instructed in the Order dated September 22, 2003 (Docket #103), that the Court would assume that New York law applied to her aiding and abetting conversion claim unless Dangerfield sought reconsideration of the decision on the basis that Texas law applied. See id. at 18-19, 29-30. Dangerfield never sought reconsideration on that basis.

As is permitted by the law governing summary judgment, Merrill Lynch asserted in its memorandum of law that there is no admissible evidence supporting Dangerfield's assertion that Merrill Lynch had knowledge of any act of conversion by Mr. Dangerfield. See Sum. Judg. Memo at 21-23. Under Celotex, where a nonmoving party bears the burden of proof on an issue, it is sufficient for the party moving for summary judgment to "point[] out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." 477 U.S. at 325. The moving party is permitted to "use a memorandum or brief to point to the absence of evidence and thereby shift to the nonmovant the obligation to come forward with admissible evidence supporting its claim." Feurtado v. City of New York, 337 F. Supp. 2d 593, 599 (S.D.N.Y. 2004) (citing cases) (internal quotation marks omitted). Because Dangerfield bears the burden of proving her claim of aiding and abetting conversion, Merrill Lynch's assertion in its brief that there is no evidence to support the "actual knowledge" element of this claim required Dangerfield to make a showing sufficient to establish this factual predicate. See Celotex, 477 U.S. at 322-23; see also Feurtado, 337 F. Supp. 2d at 599 (defendant's "assertion in its brief that there is no evidence" supporting plaintiff's claim required plaintiff "to furnish admissible evidence in support of his claim") (citations omitted).

Dangerfield's submission to the Court, however, is devoid of evidence establishing that Merrill Lynch had actual knowledge of any act of conversion by Mr. Dangerfield. Her response to this portion of Merrill Lynch's memorandum of law consists in its entirety of the following:

> Merrill Lynch New Brunswick's office of Merrill Lynch handled Mr. Dangerfield's letter in 1991 regarding the dispute over the 568-81W79 account but no correspondence has been presented in discovery either in 1998 or 2005. Mr. Gilmartin together with Mr. Paradis worked up a scheme to send the 317-85378 through the 568-81W79 knowing that it was open and statements were being sent to Mr. Dangerfield in Norway. Both accounts were open way before I

> got them and yet I was told the second account that it was "new." Statements were not provided before the transfers on July 5, 1989 and June, 1991, respectively.

Sum. Judg. Response at 19.

While it is impossible to discern with certainty the meaning of this paragraph, what is clear is that it does not consist of admissible evidence that would allow a jury to conclude that Merrill Lynch had actual knowledge of any act of conversion by Mr. Dangerfield. Nor does it cite to any such evidence. The first sentence might be read as asserting that Merrill Lynch has failed to provide a copy of a 1991 letter from Mr. Dangerfield in response to the 1998 subpoena or in response to Dangerfield's demands in this lawsuit. But this is hardly evidence to support a claim that Merrill Lynch had actual knowledge of any conversion by Mr. Dangerfield. The next sentence posits the existence of a scheme involving two Merrill Lynch employees, see Default Judg. Memo at 9-10, to do something (the precise nature of which is not readily discernible) with two account numbers "knowing" that one of them was open and that "statements were being sent to Mr. Dangerfield in Norway." But, apart from their lack of clarity, these assertions are not supported by any sworn statement by anyone with personal knowledge. They thus constitute "unsubstantiated speculation," Scotto, 143 F.3d at 114, which is insufficient to avoid a grant of summary judgment. The remaining allegations in the paragraph (relating to when accounts were open and when statements were provided), even if admissible, do not constitute evidence of actual knowledge by Merrill Lynch of any act of conversion.

As noted, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen, 100 F.3d at 258 (citing Anderson, 477 U.S. at 247-

48).  Because Dangerfield has submitted no evidence that would allow a reasonable jury to conclude that Merrill Lynch had actual knowledge of any alleged act of conversion by Mr. Dangerfield, her claim of aiding and abetting conversion must be dismissed.  See, e.g., Lenczycki, 238 A.D.2d at 248 (trial court properly dismissed plaintiff husband's claim against his and his ex-wife's money management firm for aiding and abetting his ex-wife's alleged conversion, "in the absence of evidence that they knew of [his ex-wife's] intention to convert the funds.").

Because Dangerfield's claim fails for this reason alone, it is not necessary to reach any of Merrill Lynch's other arguments.

### B.  Dangerfield's Request for Further Discovery

Rule 56 provides a mechanism whereby a party may avoid summary judgment if the party can make a showing that it is entitled to a continuance to permit further discovery.  See Fed. R. Civ. P. 56(f).  But that rule "applies to summary judgment motions made before discovery is concluded."  McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d 688, 696 n.5 (S.D.N.Y. 1999) (emphasis added) (citations omitted); accord Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 229 n.1 (S.D.N.Y. 2003); McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 588 (W.D.N.Y. 1995) ("Applications to extend the discovery deadline must be made prior to expiration of the deadline . . . .  Rule 56(f) is not intended to circumvent discovery orders.").  Because Dangerfield's "motion for default" comes a month after the discovery period closed – and two months after any such applications were

supposed to have been made, see January 20 Order ¶ 5, it is untimely and will not suffice as an application under Rule 56(f).[3]

In any event, even if we were to consider Dangerfield's application as timely, it would have to be denied because Dangerfield had ample opportunity to conduct discovery and to obtain relief with respect to any alleged insufficient responses by Merrill Lynch. Dangerfield denies that she had the opportunity to conduct discovery based on her view that Merrill Lynch has not given complete responses to her requests for documents in this case. See, e.g., Default Judg. Memo at 2-11. Indeed, her dissatisfaction with Merrill Lynch's responses to her document requests here mirrors her dissatisfaction with Merrill Lynch's responses to her 1990 subpoena for information on Mr. Dangerfield's accounts and the 1998 subpoenas seeking the same information. What is at issue for purposes of Rule 56(f), however, is simply whether Dangerfield had an opportunity to pursue discovery in this case – not whether the 1990 and 1998 responses by Merrill Lynch were adequate.

Here, Dangerfield had every opportunity to pursue discovery. The Court held a conference on January 20, 2005 (Docket #106), and issued an order (Docket #104) directing Merrill Lynch to respond to numerous discovery requests that had been made by Dangerfield and that it do so by February 21, 2005 – a date later extended at Merrill Lynch's request. See Order,

---

[3]Moreover, under Fed. R. Civ. P. 56(f), "a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (internal quotation marks and citations omitted). Dangerfield's submission, which in large part consists of a stream-of-consciousness regarding her complaints about Merrill Lynch's conduct over the past 15 years, fails in virtually all of these areas.

15

dated Feb. 22, 2005 (Docket #107). This Order was clarified on terms proposed by Dangerfield herself in a Memorandum Endorsement dated February 3, 2005 (Docket #105).

At no point since that time has Dangerfield submitted to the Court any intelligible objection to Merrill Lynch's discovery responses. Any objections she has made seem to rest entirely on her belief that Merrill Lynch is concealing documents and failing to provide truthful information regarding account numbers that she has provided to them. This belief, however, is unsupported by any evidence other than Dangerfield's own conjecture. By contrast, Merrill Lynch has provided an explanation for its responses to Dangerfield's document requests. Specifically, it has stated either that it has provided documents relating to account numbers sought by Dangerfield; that it does not have the particular documents being sought; that the account numbers do not exist; or that the account numbers are unrelated to Dangerfield or Mr. Dangerfield. See Spector Decl. ¶ 24; Bergen Letter at 3-17.

While Dangerfield disbelieves these statements by Merrill Lynch, she has never provided this Court with any basis for issuing additional orders to Merrill Lynch regarding their discovery responses. Notably, the Court explained to Dangerfield at the January 20 conference that her mere insistence that Merrill Lynch is withholding documents from her is insufficient to obtain relief from the Court. As the Court stated with respect to Merrill Lynch's responses to Dangerfield's requests prior to the expansion of the scope of discovery:

> [Merrill Lynch has] now made an assertion they do not have documents responsive other than the ones that were turned over in the . . . eight hundred eighty pages. . . . I know you disbelieve that, but . . . at this point they have responded to that document request. And unless you provide testimony from a Merrill Lynch person or something else showing that, in fact, there are such documents, there's nothing I can do.

16

(Tr. 10-11). When Dangerfield complained that the Court had barred her from dealing directly with Merrill Lynch employees and had instead required her to go through the attorneys on this case, the Court stated:

> [H]ere's what you can do. I don't know if you want to do this. But . . . you can take a deposition, if you want to go through that expense, of a document custodian at Merrill Lynch, if you want to verify the answer that there, in fact, are no documents responsive to that. There's nothing stopping you from doing that.

(Tr. 11). When Dangerfield insisted that there had to be documents Merrill Lynch was withholding and that Merrill Lynch should be sanctioned, the Court stated:

> I can't sanction them because I have no basis for showing that there is existing in their files some document they've refused to . . . give to you.

(Tr. 12). Dangerfield's failure to make a factual showing that Merrill Lynch was withholding responsive documents existed not only on January 20, 2005, but also when Dangerfield later made complaints about Merrill Lynch's responses during the course of discovery. See Memorandum Endorsement, dated Apr. 19, 2005. The same defect exists with respect to her complaints now. While Dangerfield asserts that Merrill Lynch has improperly withheld documents relevant to this case, there is no basis on which the Court can conclude that Dangerfield has not been given a full response to her discovery requests.

In sum, Dangerfield's complaints about Merrill Lynch's discovery responses are not only untimely but also fail on the merits. Thus, Dangerfield has not provided any reason for granting a continuance to allow her to seek additional evidence supporting her claim of aiding and abetting conversion.

<u>Conclusion</u>

For the foregoing reasons, Merrill Lynch's motion for summary judgment (Docket # 114) should be granted.  Dangerfield's motion for a default judgment (Docket # 115) should be denied.

**<u>PROCEDURE FOR FILING OBJECTIONS</u>**
**<u>TO THIS REPORT AND RECOMMENDATION</u>**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (e).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Honorable Kimba M. Wood, 500 Pearl Street, New York, New York 10007, and to the undersigned at 40 Centre Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Wood.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 144-45 (1985).

Dated: February 15, 2006
       New York, New York

                                                         _____
                                                         GABRIEL W. GORENSTEIN
                                                         United States Magistrate Judge

Copies sent to:

Patricia M. Dangerfield
6803 Sir William Court
Spring, TX 77379

James M. Bergen
Robert J. Grand
Dreier LLP
499 Park Avenue
New York, NY 10022

Hon. Kimba M. Wood
United States District Judge

## Conclusion

For the foregoing reasons, Merrill Lynch's motion for summary judgment (Docket # 114) should be granted. Dangerfield's motion for a default judgment (Docket # 115) should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Honorable Kimba M. Wood, 500 Pearl Street, New York, New York 10007, and to the undersigned at 40 Centre Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Wood. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 144-45 (1985).

Dated: February 15, 2006
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Patricia M. Dangerfield
6803 Sir William Court
Spring, TX 77379